07WF17010c-ord(ArcosSJOrder).wpd

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ROBERT JOWERS, et al.,** | : |
| | : **Case No. 07-WF-17010** |
| **Plaintiffs,** | : **(a/k/a Case No. 06-CV-01187 (S.D. Miss.))** |
| | : |
| v. | : **JUDGE O'MALLEY** |
| | : |
| **LINCOLN ELECTRIC CO., et al.,** | : **MEMORANDUM AND ORDER** |
| | : |
| **Defendants** | : |

This case has been consolidated with the Multidistrict Litigation known as *In re: Welding Fume Prod. Liab. Litig.*, case no. 03-CV-17000, MDL no. 1535.  Previously, the undersigned has issued a large number of rulings while presiding over: (1) the centralized proceedings; (2) three trials of other, individual welding fume cases; and (3) four other, individual cases that were set for trial but ultimately were not tried.[1]  During the course of those rulings, the Court has set out in detail the general background of this MDL, the undisputed facts applicable to this case, and relevant case law.  The Court expressly incorporates

---

[1] The first trial was in *Solis v. Lincoln Elec. Co.*, case no. 04-CV-17363, which involved claims made under Texas law.  The second trial included two consolidated cases, *Goforth v. Lincoln Elec. Co.*, case no. 06-CV-17217, and *Quinn v. Lincoln Elec. Co.*, case no. 06-CV-17218, which involved claims made under South Carolina law.  The third trial was *Tamraz v. Lincoln Elec. Co.*, case no. 04-CV-18948.  The four other cases that were set for trial but were not tried were: *Ruth v. A.O. Smith Corp.*, case no. 04-CV-18912, which settled on the eve of trial; *Landry v. Nichols Wire*, case no. 03-CV-17016, which was voluntarily dismissed early in discovery; and *Morgan v. Lincoln Elec. Co.*, case no. 04-CV-17251, and *Peabody v. Lincoln Elec. Co.*, case no. 05-CV-17678, both of which were voluntarily dismissed shortly before trial.

those rulings by reference, and so does not repeat itself here.[2]

As for this case, plaintiff Robert Jowers brings this action against five defendants: Lincoln Electric Company, Hobart Brothers Company, BOC Group, Inc., ESAB Group, Inc., and Arcos Industries, LLC.[3] The five defendants are all manufacturers of welding rods that Jowers asserts he used during his career as a welder in Mississippi. Jowers alleges the fumes given off by these welding rods caused him to suffer neurological injury.

Defendant Arcos now moves for summary judgment on all of Jowers' claims. For the reasons stated below, this motion (docket no. 203) is **GRANTED**. Further, plaintiffs' motion to deem admitted requests for admission (docket no. 269) and Arcos's motion to withdraw document admissions (docket no. 300) are both **DENIED AS MOOT**.

## I.    Arcos's Motion for Summary Judgment on All Claims.

The evidence so far adduced shows that, during his career as a welder, Jowers worked at Ingalls Shipyard from 1972-2005, except for 1981-85. For the first nine years or so of his career, Jowers was a shipfitter-welder; after that, until 1997, he was sometimes a shipfitter-welder and sometimes a shipfitter-

---

[2] In addition to incorporating by reference all rulings contained in the Orders and hearings cited in the remainder of this opinion, the Court also incorporates by reference the following Orders: *In re Welding Fume Prods. Liab. Litig.*, 2007 WL 3226951 (N.D. Ohio Oct. 30, 2007) (granting summary judgment to defendant Caterpillar in all MDL cases); *In re Welding Fume Prods. Liab. Litig.*, 2007 WL 1087605 (N.D. Ohio April 9, 2007) (granting summary judgment to defendant Metropolitan Life Insurance Company in all MDL cases); and *Ruth v. A.O. Smith Corp.*, 2005 WL 2978694 (N.D. Ohio Oct. 11, 2005) (granting summary judgment on a conspiracy claim). Should any party later wish to appeal this Order, the Court makes clear here that the other rulings so incorporated must be included as an addendum to this Order and made a part of the appellate record.

[3] Robert is joined as a plaintiff by his wife, Donna Jowers, who brings a claim for loss of consortium. For simplicity, the Court refers in this opinion to Robert as "Jowers," as though he is the sole plaintiff. The third amended complaint also listed a number of other defendants, but they have been dismissed from this case – either by the Court or voluntarily by Jowers.

2

supervisor. Then, from 1997 until 2005, Jowers worked as either a shipfitter-supervisor or a shipfitter-foreman. In his roles as supervisor and foreman, Jowers did little welding himself, except for demonstration and teaching purposes.

From the late 1970s until today – that is, almost the entirety of Jowers' career – there were present at Ingalls Shipyard certain welding consumables commonly identified and referred to as "Arcos" products. The Arcos consumables were known as "exotics," which were relatively expensive, low-volume products used for special purposes. Most of the welding done at Ingalls by shipfitters did not involve use of "exotic" consumables. Thus, when seven of Jowers' co-workers were asked to identify the brands of welding consumables they used at Ingalls, none identified any "Arcos" products, and Jowers, himself, did not recognize the Arcos name. Indeed, in his fact sheet, Jowers identified the welding consumables that allegedly caused him harm as: AWS classifications 6010, 6011, 7018, 8018, 11018, flux wire, and flux cored wire. None of these products are or were manufactured by defendant Arcos Industries.[4]

Knowing that there were Arcos products at Ingalls Shipyard during his tenure, Jowers has named in his third amended complaint defendants Arcos Industries. Specifically, Jowers names:

> Arcos Industries, L.L.C., f/k/a Arcos Alloys Corporation ("Arcos") d/b/a Hoskins Manufacturing Company, . . . [which] is a foreign limited liability company organized under the laws of the State of Michigan, that has done and is doing business in Mississippi, with its principal place of business is 1 Arcos Drive, Mt. Carmel, Pennsylvania 17851-2511.

Complaint at ¶3 (a).[5]

---

[4] Jowers urges that, due to Arcos's failure to timely respond to discovery, the Court should deem admitted the fact that Arcos manufactured the product classifications at issue. In light of an affidavit supplied by Arcos to the contrary, and the Court's preference for determinations on the merits, the Court will not allow Jowers' case against Arcos to proceed based only on a missed deadline.

[5] Jowers alleges that Arcos Industries "at relevant times was a manufacturer and seller of welding products." *Id.* ¶3(a).

In support of its motion for summary judgment, Arcos submits evidence showing the following corporate history:

| | |
|---|---|
| March 8, 2000 | Arcos Alloys Corp. is incorporated in Pennsylvania. |
| December 18, 2001 | Arcos Industries, LLC purchases the manufacturing business and assets Arcos Alloys Corp. |
| October 1, 2002 | Arcos Alloys Corp. changes its name to Socra Corp. |

There is no evidence of record regarding any "Arcos"-related entity before March 8, 2000. Thus, the evidence shows that the entity responsible for any "Arcos" welding consumable that Jowers may have used at Ingalls (if any), over time, is as follows:

| | |
|---|---|
| before Mar. 8, 2000 | unknown |
| Mar. 8, 2000 – Dec. 17, 2001 | Socra Corp. (f/k/a Arcos Alloys Corp.) |
| Dec. 18, 2001 – present | Arcos Industries, LLC |

In summary, the undisputed evidence is that: (1) if Jowers used Arcos consumables *at all* when he was a shipfitter-*welder* (as opposed to a supervisor), he used them rarely; (2) if Jowers used Arcos consumables *at all* when he was a shipfitter-*welder*, they were not consumables manufactured by defendant Arcos Industries (who only manufactured Arcos consumables later, when Jowers worked as either a shipfitter-supervisor or a shipfitter-foreman, not as a shipfitter-welder); (3) if Jowers used Arcos consumables *at all* when he was a shipfitter-*supervisor* or shipfitter-*foreman*, he used them *exceedingly* rarely; and (4) in any event, no employee of Ingalls Shipyard, including Jowers himself, can recall Jowers using any Arcos product at any time.

As this Court stated in a related opinion, "[t]here can be no product liability claim against a defendant where there was no use of the defendant's product." *In re Welding Fume Prods. Liab. Litig.*, 2007 WL 3226951 at *17 (N.D. Ohio, Oct. 30, 2007) (granting summary judgment to defendant Caterpillar

in all MDL cases). Similarly, no reasonable jury could find in favor of a plaintiff on a product liability claim – that is, a claim sounding in negligence or strict liability – against a defendant where there exists only rank speculation, premised upon an essentially non-existent evidentiary record, that the plaintiff ever actually used that defendant's product.[6] This is simply not a case where the evidence can support an inference that welding consumables of the sort used by Jowers were manufactured by defendant Arcos Industries, and were available to Jowers during the time he welded.[7]

---

[6] "It is elementary that in any action claiming injury from a product, the plaintiff must show causal connection between the defendant manufacturer and that product." *Baughman v. General Motors Corp.*, 627 F.Supp. 871, 874 (D. S.C. 1985). *See* Annotation, *Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury*, 51 A.L.R.3d 1344, 1349 (1973) ("Regardless of the theory which liability is predicated upon, whether negligence, breach of warranty, strict liability in tort, or other grounds, it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product, and this rule is supported in all of the cases examined in this annotation.") (footnotes omitted).

Plaintiffs in this MDL have not invoked any modern theories of liability, such as market share liability, that dispense with the traditional requirement of product identification.

[7] If the evidence showed, for example, that (1) "Manufacturer X" supplied certain types of welding consumables to Jowers' employer during the time that Jowers worked there, and (2) Jowers regularly used those types of welding consumables during his employment, and (3) Jowers also recalled using products of the type or brand produced by Manufacturer X, then a jury could reasonably infer that Jowers actually used Manufacturer X's product – even if multiple manufacturers supplied similar products to Jowers' employer at the same time. Absolute precision in product identification is not necessary; rather, the entirety of the evidence need only be sufficient to allow a jury to find, by a preponderance of the evidence, that the plaintiff's injuries were caused by a given product. In this case, however, the evidence supports *none* of the inferential bases listed above.

In this case, there is no sound evidentiary basis upon which a jury could reasonably find or infer that Jowers used a welding consumable manufactured by Arcos Industries, LLC.  Accordingly, as a matter of law and undisputed fact, Arcos Industries cannot be found liable to Jowers for any of the claims he asserts.[8]

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**DATED**: January 18, 2008

---

[8] The Court previously dismissed defendant Socra Corporation from this lawsuit, based on failure of service of process.  Based on this dismissal, the Court denied Socra's motion for summary judgment as moot.  Given that Socra's summary judgment motion was based on the exact same facts and law as is Arcos Industries' motion, however, it is clear the Court would have also granted Socra's summary judgment motion.